LEWIS (REVENS v.). See Case No. 11,711.

LEWIS (RINGGOLD v.). See Case No. 11,-847.

LEWIS (ROGERS v.). See Case No. 12,014.

LEWIS (ROGERS' LOCOMOTIVE WORKS v.). See Case No. 12,024.

LEWIS (SCOTT v.). See Case No. 12,539.

---

## Case No. 8,331.

### LEWIS v. SHREVEPORT.

[3 Woods, 205.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1878.[2]

CHARTER—INTERPRETATION—ISSUE OF BONDS—AUTHORIZATION BY THE LEGISLATURE.

1. The charter of a city declared that "the city council may, when it deems it for the public interest, provide for the construction of a city hall, markets and other structures of public necessity and utility, the cost of which shall be paid by the city, provided that whenever the amount or cost * * * of erecting the structures aforesaid, from time to time, exceeds the amount of funds in the city treasury, then the council are hereby authorized to issue bonds of the city, * * * and said council shall have power to dispose of said bonds in such manner as they may deem for the best interests of the city, the proceeds of which shall be used solely for the purpose for which they shall be issued; and, also, that "no ordinance * * * providing for the purchase of real estate shall be passed except by a majority of the council." *Held*, that these provisions of the charter did not authorize the city council to issue bonds to pay for a tract of land within or near the city limits, to be given to a foreign railroad corporation on which to establish and maintain its depot and machine shops.

[Cited in note to De Voss v. City of Richmond, 18 Grat. 338.]

2. To authorize a municipal corporation to issue bonds for purposes not fairly coming within the ends for which municipal corporations are created, there must be a legislative grant of power either in express terms or by necessary implication.

3. A municipal corporation cannot clothe itself with power to issue bonds for extraneous purposes by the assertions of the legislative, executive and judicial departments of its government, and of its inhabitants, that it possesses the power.

4. In deciding whether a municipal corporation has power to issue bonds for a specific purpose, the construction put upon the charter by all parties in interest, and where rights have grown up under that construction, is entitled to weight only in a case where the power may be fairly inferred from the terms of the charter. In such a case, doubts and ambiguities will be resolved in favor of the power.

5. Where a municipal corporation issues bonds for a purpose not authorized by its charter, it cannot be estopped from denying its authority to do so by the acts of its inhabitants and officers, nor by receiving and retaining the consideration for which the bonds were issued.

6. An issue of bonds by a municipal corporation, without authority of law, cannot be ratified by its officers without the sanction of the legislature.

[Cited in brief in Peoria & S. R. Co. v. Thompson, 103 Ill. 195.]

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

[2] [Affirmed in 108 U. S. 282, 2 Sup. Ct. 634.]

This suit was brought [by Charles Edward Lewis] to recover the amount of certain over-due interest coupons belonging to nine negotiable bonds for one thousand dollars each, issued by the defendant. The parties waived the intervention of a jury, and having agreed upon the facts, submitted the case to the court upon the law arising on the agreed facts. It appeared, from the agreement of the parties, that on April 27th, 1871, an act was passed by the legislature of Louisiana, "to incorporate the city of Shreveport, to define its limits and provide for its better police and municipal government." [Acts La. 1871, p. 218.] This act constituted the charter of the city at the time the bonds in question were issued and sold. Section 3 of the charter provided that the government of the city of Shreveport, and the administration of its affairs, should be vested in a mayor and four administrators, who should form its council. Section 10 declared: "The council shall have full authority to make and pass such by-laws and ordinances as are necessary and proper, * * * to regulate and make improvements to the streets, public squares, etc., and, if for such purpose the land of any private person or body corporate is necessary to be had, the said city council shall have the right and power of purchasing the same at a reasonable price, or cause the same to be expropriated," etc. Section 17 declared: "The council may, when it deems it for the public interest, provide by ordinance for the paving, opening or widening of any street or streets, or the construction of a city hall, markets and other structures of public necessity and utility, the cost of which shall be paid by the city, provided that whenever the amount or cost of paving said streets, or erecting the structures aforesaid from time to time, exceeds the amount of funds in the city treasury, then the council are hereby authorized to issue bonds of the city running forty years, with interest coupons attached, and bearing interest at the rate of and not exceeding ten per cent per annum, payable semi-annually, * * * and said council shall have power to dispose of said bonds in such manner as they may deem for the best interest of the city, the proceeds of which shall be used solely for the purpose for which they shall be issued." Section 20 declared: "No ordinance * * * providing for the purchase or sale of real estate shall be passed, except by a majority of the council," etc. On June 26th, 1872, the city council enacted an ordinance which provided for the purchase of certain real estate to be given to the Texas & Pacific Railroad Company, upon which the company was permanently to establish and maintain its depots and machine shops; which provided for the payment of the purchase price of such real estate by the issue and sale of the bonds of the city to the amount of $260,000, payable forty years after date, with interest at eight per cent per

annum, payable semi-annually, and with interest coupons attached; which provided for the levy of an annual tax to pay the principal and interest of the said bonds, and which provided that said ordinance should be submitted to a vote of the people of the city for their ratification and approval. This ordinance is the one by virtue of which the bonds in question were issued and sold. On July 1, 1872, the said ordinance was submitted to a vote of the people of the city, and seven hundred and five votes were cast for and three votes against its ratification and approval. On July 1, 1872, in pursuance of the ordinance and vote aforesaid, and for the purpose named in the ordinance, the city issued its bonds for $260,000. On July 19, 1872, the city council passed an ordinace authorizing George Williamson, Esq., who was appointed the agent of the city for that purpose, to sell said bonds at sixty cents on the dollar. On July 23, 1872, the city council appropriated money to pay the cost of engraving said bonds, and the expenses incurred by Williamson in his effort to sell them. On October 31, 1872, the city attorney, as such officer, gave an opinion that the city had power to issue said bonds, and that the object for which said bonds were issued was of public utility, and clearly within the power conferred by the city charter. On the same day, the city council passed an ordinance whereby said Williamson was appointed special agent of the city to sell said bonds, and upon the failure to sell, authorized him to execute the promissory note of the city for $130,000, and to pledge said bonds as security for the payment of the same, and to pledge the faith of the city to make good any arrangement entered into by him in the sale of said bonds, or in raising money thereon. Williamson, as agent for the city, appointed one Jamison, of Philadelphia, to sell the bonds, and the city council, by ordinance, ratified the appointment. On November 7, 1872, the city council passed an ordinance whereby Williamson was authorized to turn over to Thomas A. Scott, Esq., $200,000 of said bonds upon his assuming the payment of the indebtedness incurred by the city in the purchase of said real estate, to be donated to the Texas & Pacific Railroad Company. The city council, on December 17, 1872, passed an ordinance levying a tax to pay the principal and interest of said $260,000 of bonds. The city administrator of finance, on March 1, 1873, made an official statement of the amount of the indebtedness of the city, in which statement was included the said bonds, and on March 27, 1873, Williamson, as agent of the city, wrote to Jamison a letter in which he stated that ample provision had been made by ordinance enacted by the city council for the payment of the principal and interest of the $260,000 of bonds. On June 13, 1873, the city council passed an ordinance pledging the faith of the city to pay the said promissory note made by Williamson, as its agent, to secure the payment of which the said $260,000 of bonds had been hypothecated, and instructing the city administrator of finance to hold sacred for such purpose the tax levied by ordinance of December 17, 1872. The official budget of the city, published on November 27, 1875, contained a statement of the indebtedness of the city on that day, in which was included the $90,000 of said bonds held and owned by the plaintiff, the same being the bonds to which the coupons sued on belong. The plaintiff was a bona fide holder of the bonds to which the coupons sued on belong, and of said coupons, having purchased said bonds, with the coupons attached, in open market, paying therefor eighty-five cents on the dollar. Both bonds and coupons were negotiable in form, being payable to bearer. The Texas & Pacific Railroad Company had never been chartered by the state of Louisiana, but held a lease from the Vicksburg, Shreveport & Texas Railroad Company, of the railroad between Shreveport and the Texas line, which lease is still in force. The coupons sued on were produced by the counsel of the plaintiff, and filed as evidence in the cause.

Alfred Ennis, Geo. S. Lacy, and Frank N. Butler, for plaintiff.

First. The defendant had power, under its charter, to make and issue the bonds. (See provisions of charter set out in the agreed facts.) The construction put upon the charter by the municipal corporation and the people, and followed by them, on the strength of which the municipal corporation has sold its bonds and received value therefor, will be maintained by the courts, even though the authority to issue the bonds is denied from an ambiguous and ill-expressed statute. James v. Milwaukee, 16 Wall. [83 U. S.] 159; Woodhull v. Beaver Co. [Case No. 17,974]; Luling v. City of Racine [Id. 8,603]; Van Hostrup v. Madison, 1 Wall. [68 U. S.] 291; Memphis v. Brown [Case No. 9,415]; San Francisco Gas Co. v. City of San Francisco, 9 Cal. 453; Meyer v. Muscatine, 1 Wall. [68 U. S.] 393; Schenck v. Marshall Co. [Case No. 12,449].

Second. Having issued the bonds, sold them in open market, received and retained the consideration therefor, and the bonds having subsequently come to the hands of plaintiff bona fide and for value, the city is estopped from denying its authority to issue the same or denying the validity thereof. Hood v. New York & N. H. R. Co., 22 Conn. 502; Treadwell v. Commissioners, 11 Ohio St. 183; Hopple v. Trustees Brown Tp. 13 Ohio St. 311; Garrett v. Van Horn, 7 Ohio St. 327; Goshen Tp. v. Shoemaker, 12 Ohio St. 624; Supervisors v. Schenck, 5 Wall. [72 U. S.] 772; City of Nauvoe v. Ritter, 97 U. S. 389; Society for Savings v. City of New London, 29 Conn. 174; Ferguson v. Landram,

1 Bush. 548; Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381; Cromwell v. Sac Co., 96 U. S. 51.

A. H. Leonard, J. D. Rouse. Wm. Grant, and W. A. Seay, for defendant.

WOODS, Circuit Judge. The power of the city of Shreveport to issue the bonds in question is denied. The power, according to the claim of plaintiff, is to be found in section 17 of the city charter, which authorizes the council, when it deems it for the public interest to provide for the construction of a city hall, markets and other structures of public necessity and utility, and under certain circumstances, to issue bonds in payment thereof, and section 20, which says, "no ordinance for the purchase or sale of real estate shall be passed except by a majority of the council." Under these provisions it is claimed that the city council had authority to issue and sells bonds of the city to the amount of $260,000 for the purpose of paying for real estate, to be given to a foreign railroad corporation, on which to establish and maintain its depots and machine shops. To my mind, the proposition seems utterly untenable. The power given is to erect a city hall, markets and other structures of public necessity and utility; clearly the purpose for which the bonds in suit were issued was not to erect a city hall or markets. Does the donation of land to a railroad company, on which to build its depot and shops, fall within the terms "other structures of public necessity and utility?" Lord Bacon observes that "as exception strengthens the force of a law in cases not excepted, so enumeration weakens it in cases not enumerated." Hence the celebrated rule that "when particular words are followed by general ones, as it often happens after an enumeration of several classes of persons or things, there is added 'and all others,' the general words are restricted in meaning to objects of like kind with those specified." 1 Bish. Cr. Law, § 275. Applying this rule to the interpretation of the clause of the charter relied on for authority to issue bonds, it is clear how perfectly baseless is the construction claimed. The charter, under this rule, means to authorize the city council to erect a city hall, markets and other like structures of public necessity and utility. This would include houses for fire engines, water works, gas works, houses for public schools, all to be owned by the city, and in which all the citizens should have an interest. To stretch the clause so as to authorize the purchase of land by the city to be given away to a private corporation, on which it was to erect structures for its own uses, is, to my mind, entirely unwarrantable. Can it be claimed for a moment that such a use of the power to issue bonds entered into the contemplation of the legislature?

"A municipal corporation is but a subordinate branch of the government. It represents the state sovereignty in a limited district, and for specific purposes. These purposes are local government and police. The power of taxation is granted as a means of carrying out these purposes. The diversion of these revenues to other purposes is unlawful and ultra vires. If it is desirable that a municipal body should have the power of subscribing to railroads or plank roads, or of issuing commercial securities to be sold in the financial markets, it is time enough for it to do so when authorized thereto by legislation. It possesses no powers but such as are given to it expressly or by necessary implication." Mr. Justice Bradley, in Chisholm v. City of Montgomery [Case No. 2,686]. See, also, Dill. Mun. Corp. § 106; Mayor v. Ray, 19 Wall. [86 U. S.] 468; Knapp v. Mayor, etc., of Hoboken, 34 N. J. Law, 374; Jones, Ry. Sec. §§ 222, 223. Applying this rule to the question in this case, can it be said that the power exercised by the city council of Shreveport in issuing bonds for the purpose mentioned is expressly given by the charter, or results from necessary implication? It seems to me that it is unnecessary to multiply words to show that the power is not conferred. It is perfectly obvious that such was not the purpose of the legislature. The absence of such a power is too plain for argument. But the plaintiff claims that the people of the city and the judicial, legislative and executive departments of its municipal government have placed a construction on its charter and on the ordinance by virtue of which the bonds were issued, which justifies the issue of the bonds, and that the city is therefore liable to pay them. This proposition amounts to this, that a municipal corporation can clothe itself with power to issue bonds for extraneous purposes by asserting that it possesses it. On the other hand, the current of authority is unbroken that to authorize a municipal corporation to subscribe for stock in a public improvement and pay for it by the issue of negotiable securities, there must be a legislative grant of power either in express terms or by necessary implication. Thomson v. Lee Co., 3 Wall. [70 U. S.] 330; Dill. Mun. Corp. § 106. and many cases there cited. The proposition that when the power has not thus been conferred, it may be acquired by a municipal corporation by a persistent assertion that it has the power, and by acting as if it had it, is inconsistent with all the cases cited. The intention of the legislature is to be sought for; that whatever it may be constitutes the law. James v. Milwaukee, 16 Wall. [83 U. S.] 161.

In deciding whether a municipal corporation has power to issue bonds for a specific purpose, the construction put upon the charter by all parties in interest. and where rights have grown up under that construction, is entitled to weight only in a case

where the power may be fairly inferred from the terms of the charter. In such a case doubts and ambiguities will be resolved in favor of the power. Thus, in Woodhull v. Beaver Co. [Case No. 17,974], Judge Grier says: "But now, when all parties have given their construction to the act, and it can by its terms be made to include the power, the court will not exercise astutia to give it a stringent interpretation in order to enable a county to disown its obligations after having received their value." To the same effect are the following cases: James v. Milwaukee, 16 Wall. [83 U. S.] 159; Van Hostrup v. Madison, 1 Wall. [68 U. S.] 297; Meyer v. Muscatine, Id. 393. But in all these cases there was reasonable ground in the acts of the legislature for the construction by which the power to issue the bonds was derived. In this case authority for the power exercised is wholly wanting, and by no reasonable or fair construction can it be presumed. The plaintiff further claims that by the acts of its people and officers set in the record, and by the fact that the city has received and still retains the consideration for which the bonds were sold, she is estopped from denying their authority to issue the same, and from denying their validity.

The authorities cited by counsel for plaintiff from the United States Supreme Court Reports to sustain their proposition do not sustain it. They only decide that when the power to issue bonds is given to a municipal corporation, the corporation is estopped from setting up irregularities in their issue. But where the power is wanting there is no estoppel, and there can be no ratification by the municipal corporation or its officers. In Chisholm v. City of Montgomery, supra, Mr. Justice Bradley said: "The plea that the city is estopped by the acts of its officers, by the resolutions of the city council, or by the negotiable form or other matter in the bonds themselves, from denying the authority of such officers to pledge the faith of the city in aid of said plank roads and to issue the bonds in question, cannot be maintained. Public officers cannot acquire authority by declaring that they have it. They cannot thus shut the mouth of the people whom they represent. * * * No municipal or political body can be estopped by the acts or declarations of its officers from denying their authority to bind it." In the case of Marsh v. Fulton Co., 10 Wall. [77 U. S.] 684, the supreme court of the United States says: "It is also contended that if the bonds in suit were issued without authority, their issue was subsequently ratified, and various acts of the supervisors of the county are cited in support of the supposed ratification. These acts fall very far short of showing any attempted ratification, even by the supervisors. But the answer to all of them is, that the power of ratification did not lie with the supervisors. A ratifi-

cation is in its effect upon the act of the agent equivalent to the possession by him of a previous authority. It operates upon the act ratified in the same manner as though the authority of the agent to do the act originally existed. It follows that a ratification can only be made when the party ratifying possesses the power to perform the act ratified." So in Loan Ass'n v. Topeka, 20 Wall. [87 U. S.] 667, the same court says: "We do not attach any importance to the fact that the town authorities paid one installment of interest on their bonds; such a payment works no estoppel. If the legislature was without power to authorize the issue of these bonds, and its statute attempting to confer such authority is void, the mere payment of interest which was equally unauthorized cannot create of itself a power to levy taxes resting on no other foundation than the fact that they have once been illegally levied for that purpose." See, also, Town of South Ottawa v. Perkins, 94 U. S. 266. The want of power in the officers of the city of Shreveport to ratify the issue of bonds is as clear as their want of power to issue the bonds in the first instance. When contracts are ratified, it must be by a person or body having the power to ratify. Delafield v. Illinois, 2 Hill, 159; Hotchin v. Kent, 8 Mich. 526; Dubuque Female College v. District Township of City of Dubuque, 13 Iowa, 555; Estey v. Inhabitants of Westminster, 97 Mass. 324.

The decisions of the supreme court of the United States are uniform to the effect that a municipal corporation cannot without legislative authority issue bonds in aid of an extraneous object. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; Pendleton Co. v. Amy, 13 Wall. [80 U. S.] 297; Kenicott v. Supervisors, 16 Wall [83 U. S.] 452; St. Joseph Tp. v. Rogers, Id. 644; Harshman v. Bates Co., 92 U. S. 569; Town of Colomo v. Eaves, Id. 484; Town of South Ottawa v. Perkins, 94 U. S. 260. That power cannot originate or be derived from a vote of the people. The source of the authority is the legislature. In this case there was no power in the city of Shreveport to issue the bonds in question. All persons dealing in the bonds are bound to take notice of this fact. There can be no bona fide holders without notice when there is no power to issue the bonds. The bonds are void and the holders are presumed to have had notice of this fact when they purchased them. There must be judgment on the agreed facts for defendant.

[NOTE. The plaintiff in this action suing out a writ of error, the judgment came up for review in the supreme court. Mr. Chief Justice Waite delivered the opinion of the court. It is a well-settled rule, he said, that unless power has been given by the legislature to a municipal corporation to grant pecuniary aid to railroad companies, all bonds for the municipality, issued for such purpose, and bearing evidence of that fact on their face, are void, even in the hands of bona fide holders, and this, whether the people

voted the aid or not. In the case at bar there was no claim that such power had been granted to the city of Shreveport, nor was there any provision in the charter from which anything of the kind could be implied. And as it appeared that the bonds carried on their face full notice that they were issued for a purpose not authorized by law, the court reached the conclusion that the decision of the court below should be affirmed. 108 U. S. 282, 2 Sup. Ct. 634.]